## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 32545

| | | |
|---|---|---|
| LANE RANCH PARTNERSHIP, an Idaho general partnership, | ) ) ) | **2007 Opinion No. 76** |
| Plaintiff-Appellant, | ) ) | **Boise, March 2007 Term** |
| v. | ) ) | **Filed: May 23, 2007** |
| CITY OF SUN VALLEY, IDAHO, a political subdivision of the State of Idaho, | ) ) ) | **Stephen W. Kenyon, Clerk** |
| Defendant-Respondent. | ) ) ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Hon. James J. May and Robert J. Elgee, District Judges.

The decision of the district court granting summary judgment is reversed and the order denying judicial review is vacated. The case is remanded for further proceedings.

Robertson & Slette, PLLC, Twin Falls, for appellant. Gary D. Slette argued.

Naylor & Hales, P.C., and Hawley Troxell Ennis & Hawley, Boise, for respondent. Geoffrey M. Wardle argued.

---

TROUT, Justice

Lane Ranch Partnership (the Partnership) appeals from the district court's order granting summary judgment in favor of the City of Sun Valley (the City) and its affirmation on judicial review of the City's denial of three applications relating to rezoning and subdividing the Lane Ranch property.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1986, the Partnership's predecessor in interest entered into an Annexation Agreement (Agreement) with the City to annex the 700-plus acre property known as Lane Ranch. The Agreement recited that there were benefits to the Partnership in having the City annex Lane Ranch, and there were also burdens to the City in doing so. Lane Ranch is bisected by Elkhorn

Road, with a 166-acre tract falling north of the road (the Northern Property) and the remainder of Lane Ranch falling to the south (the Southern Property). The parties agreed that a portion of the Southern Property would be developed into residential lots and would be zoned as RS-1, residential. The Agreement authorized fewer residential units than would otherwise be allowed according to the zoning. In addition, the Agreement noted that the Northern Property had previously been zoned OS-1, open space. Various restrictions in the Agreement emphasized the importance of keeping this area as open space land as a component of the agreement to annex the residentially-zoned land.

At the time the Agreement was signed, the entire Lane Ranch property was not yet part of the City. Consequently, the land technically had not yet been zoned, despite recitations of existing zoning in the Agreement. In any event, after the Agreement was signed, the property was annexed into the City, zoned in accordance with the recitations in the Agreement and the Partnership then developed the Southern Property. Although the Agreement allowed for 120 residential lots, the Partnership opted to develop only 110.

In 2001, the Partnership filed three applications with the City regarding the Northern Property. The Partnership sought to have that property subdivided and re-zoned so that seven residential lots could be built on what had previously been designated open space, and to amend the City's Comprehensive Plan in order to permit this development.[1] The City issued Findings and Conclusions with respect to each of the three applications. In doing so, the City analyzed several factors, including the potential effect of granting the applications on the surrounding property and the requirements of Idaho's Local Land Use Planning Act (LLUPA). The City also referred to the Agreement and made the specific finding that, with respect to each of the applications, changing the zoning designation of the Northern Property "would require amending the Annexation Agreement." The City then denied each of the Partnership's three applications.

In response to the City's denial of its applications, the Partnership filed a declaratory judgment action against the City, arguing that the Agreement did not require amendment for the applications to be granted and requesting a declaration reversing the City's denial of the zoning

---

[1] The land north of Elkhorn Road was originally zoned as "open space" under OS-1. The ordinance title was later amended in name only to the OR-1 zoning district defined as "open recreation."

applications. At approximately the same time, the Partnership also pursued judicial review of the City's decisions denying their zoning and subdivision applications. Both matters went before Judge May, who ultimately concluded the Agreement effectively meant the Northern Property could not be rezoned. Judge May concluded the Agreement's limitation of 120 units applied to the RS-1 designated area south of Elkhorn Road and determined therefore, that the Partnership had no ability to develop the Northern Property into residential lots. Judge May then retired. When the case was reassigned to Judge Elgee, the Partnership asked him to reconsider Judge May's decision. Judge Elgee agreed with Judge May and reiterated that, while the Partnership was free to seek a rezone, it would do no good absent an agreement by the City to amend the Agreement. Judge Elgee also analyzed and affirmed the Findings and Conclusions entered by the City in denying the three applications. The Partnership now appeals from both of the district court's decisions.

## II.

## STANDARD OF REVIEW

On appeal from the grant of a motion for summary judgment, this Court's standard of review is the same as the standard used by the district court originally ruling on the motion. *Intermountain Forest Management v. Louisiana Pacific Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. I.R.C.P. 56(c).

The burden of proving the absence of material facts is upon the moving party. *Thomson v. City of Lewiston*, 137 Idaho 473, 476, 50 P.3d 488, 491 (2002); *see also Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 452 P.2d 362 (1969). The facts are drawn from a review of the record, consisting of the motions, pleadings, affidavits, depositions, and admissions on file. I.R.C.P. 56(c). Disputed facts are to be construed liberally in favor of the non-moving party. *Conway v. Sonntag*, 141 Idaho 144, 106 P.3d 470 (2005). If reasonable minds might come to different conclusions, summary judgment is inappropriate. *Carl H. Christensen Family Trust v. Christensen*, 133 Idaho 866, 870, 993 P.2d 1197 (1999).

In this case, in addition to appealing the district court's grant of summary judgment, the Partnership seeks judicial review of the City's decision denying its application for rezoning. "The Idaho Administrative Procedures Act (I.A.P.A.) governs the review of local zoning

3

decisions." *Friends of Farm to Market v. Valley County*, 137 Idaho 192, 196, 46 P.3d 9, 13 (2002), citing *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998). In an appeal from the decision of a district court acting in its appellate capacity under the I.A.P.A., this Court reviews the agency record independently of the district court's decision. *Id.* (citations omitted); *Howard v. Canyon County Bd. of Comm'rs*, 128 Idaho 479, 480, 915 P.2d 709, 710 (1996) (citation omitted).

This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67-5279(1). Rather, this Court defers to the agency's findings of fact unless they are clearly erroneous. *Friends of Farm to Market*, 137 Idaho at 192, 46 P.3d at 13. The agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record. *Id.*

## III.

## DISCUSSION

We are presented with two questions, arising from the two proceedings before us: (1) did the district court err in granting summary judgment to the City in the declaratory judgment action, and (2) should this Court reverse the City's decision denying the Partnership's applications on judicial review. We address each in turn and also discuss attorney fees awarded below.

### A. Declaratory Judgment

The Partnership alleges error in the district court's ruling that the Agreement unambiguously prohibited development on the Northern Property. On appeal, the Partnership advances two alternate theories. First, it argues the Agreement is unambiguous and allows for up to 120 residential units on Lane Ranch as a whole, including the Northern Property. In the alternative, the Partnership argues the Agreement is ambiguous in its limitation on development and extrinsic evidence is necessary to determine the intent of the parties.

Under *Brooks v. Pinehaven Planning Bd.*, 138 Idaho 826, 70 P.3d 664, (2003), a court analyzes a document such as the Agreement in two steps. The first step is to determine whether there is an ambiguity in the plain language of the covenant. *Id.* at 826, 70 P.3d at 667. "Words or phrases that have established definitions in common use or settled legal meanings are not rendered ambiguous merely because they are not defined in the document where they are used."

4

*Id.*, citing *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 201, 899 P.2d 411, 414 (1995). Rather, a covenant is ambiguous when it is capable of more than one reasonable interpretation on a given issue. *Brooks*, 138 Idaho at 826, 70 P.3d at 667. Ambiguity is a question of law subject to plenary review. *Id.*, citing *Brown*, 129 at 192, 923 P.2d at 437. To determine whether a covenant is ambiguous, the court must view the agreement as a whole. *Id.* The second step occurs after the court has determined whether a covenant or contract is ambiguous. "If the covenants are unambiguous, then the court must apply them as a matter of law." *City of Chubbuck*, 127 Idaho at 201, 899 P.2d at 414.

We agree with the district court that the Agreement is not ambiguous. However, in contrast to the Partnership's proposed reading of the Agreement, we find the Agreement clearly indicates the parties agreed that the entire Lane Ranch property would be annexed, that the property would be zoned open space in part and residential in part, and that the number of houses in the area zoned residential would be limited to 120 units.

The Partnership contends the Agreement's limitation on residential units on "the property" unambiguously establishes that the 120-unit limit applies to the entire Lane Ranch property and implicitly invites building on the Northern Property. On its face, the Agreement defines the term "the property" to refer to the Lane Ranch property as a whole. Recital (2) of the Agreement describes the boundaries of the Lane Ranch property and states that this land "is referred to in the Agreement as 'the property.'" However, the language of the Agreement makes clear that residential building is limited to the area of the property zoned residential under RS-1. Paragraph 3, "Limitation on number of residential units," reads, in part:

> A portion of the property has been zoned by Sun Valley RS-1 under the language of the Sun Valley Zoning Ordinance. The remaining portions of the property have been zoned OS-1. The RS-1 zoning allows for the construction of substantially more residential units than is desired either by Sun Valley or CASCEA. *The parties desire to limit the number of residential units to be constructed on the RS-1 zoned area of the property to 120 units*, as defined in the Sun Valley Zoning Ordinance, and to accomplish that end the parties agree as follows: CASCEA covenants and agrees for itself, its successors, assigns and grantees, that the property shall not be developed or used in any way whereby there are more than 120 residential units on the property.

(emphasis added). The Agreement distinguishes between the land zoned OS-1 and the land zoned RS-1 and explicitly limits its discussion of the 120-unit limit to the RS-1 zoned land. Further, the later statement that there shall not be "more than 120 residential units on the property" does not function to open up the entire Lane Ranch property to the 120-unit limit. The

5

language is explicitly employed "to accomplish that end" of limiting development on the RS-1 land to 120 units. Thus, even if it can be said that the 120-unit limit on development applies to the Lane Ranch property as a whole, it is only because that is the logical corollary to a 120-unit limit on the only area of the property that allows residential development. Because we find the Agreement to be unambiguous in its limitation of residential development to the area identified in the Agreement as residentially-zoned, there is no need to consult extrinsic evidence.

We are persuaded, however, that the courts below misread the effect of Agreement. The district judges found that under the terms of the Agreement, the Agreement itself would have to be modified before any rezoning could occur. We find not only that the Partnership did not waive its right to seek a rezone of the Northern Property, but further that any proposed rezone did not hinge on modification of the Agreement. While the Agreement clearly refers to the zoning of the different areas of the property – and the purpose of that zoning – the Agreement nowhere states that rezoning is prohibited. This Court generally applies the rules of contract construction to interpret restrictive covenants. *Brooks*, 138 Idaho at 829, 70 P.3d at 667; *see also Brown v. Perkins*, 129 Idaho 189, 192, 923 P.2d 434, 437 (1996). "However, because restrictive covenants are in derogation of the common law right to use land for all lawful purposes, the Court will not extend by implication any restriction not clearly expressed." *Brooks*, 138 Idaho at 826, 70 P.3d at 667. All doubts about whether a restriction is imposed are resolved in favor of the free use of land. *Id.* In order to have limited the Partnership's ability to seek a rezone of any part of the Lane Ranch property, the Agreement must have clearly stated such a limitation. Here, there is no statement in the Agreement that the areas of Lane Ranch could not be rezoned under any circumstance, and there is no prohibition to the Partnership seeking a rezone. Because there is no limitation in the Agreement on the Partnership's pursuit of a rezone, we will not extend one by implication.

As a matter of law, the Partnership did not waive or forfeit its right to seek a rezone, and the Agreement did not require amendment before a rezone could be granted. We therefore reverse the district court orders awarding summary judgment to the City.

**B. Judicial Review**

The Partnership requests judicial review and reversal of the City's rejection of the Partnership's applications for zone change, subdivision, and proposed Comprehensive Plan

6

amendment for the development to be known as Triumph Springs. The City's Findings in each of the three applications are nearly identical.

The Idaho Administrative Procedures Act (I.A.P.A.) governs judicial review of local zoning decisions. The I.A.P.A. applies to judicial review of "an agency," which it defines as a "state board, commission, department or officer authorized by law to make rules or to determine contested cases...." I.C. § 67-5201(2); *Petersen v. Franklin County*, 130 Idaho 176, 182, 938 P.2d 1214, 1220 (1997). As the Court explained in *Friends of Farm to Market*, the party attacking an agency decision must first show that the agency erred in a manner specified in Idaho Code § 67-5279(3), and then it must show that a substantial right has been prejudiced. 137 Idaho at 196, 46 P.3d at 13.

### 1. Agency Error

In reviewing an agency's findings of fact, the court does not substitute its judgment for that of the agency as to the weight of the evidence presented. *Friends of Farm to Market*, 137 Idaho at 196, 46 P.3d at 13. Even where there is conflicting evidence before the agency, an agency's factual determinations are binding on the reviewing court so long as the determinations are supported by substantial competent evidence in the record. *Id.* The Board's zoning decision may be overturned only where its findings: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. *Id.*, citing I.C. § 67-5279(3). Substantial and competent evidence is "relevant evidence which a reasonable mind might accept to support a conclusion." *Lamar Corp. v. City of Twin Falls*, 133 Idaho 36, 43, 981 P.2d 1146, 1153 (1999).

In the absence of a showing of irregularities in procedure before the agency or of good reason for failure to present evidence to an agency, the court's review of disputed issues of fact must be confined to the agency record for judicial review. I.C. §§ 67-5276 – 5277; *Urrutia v. Blaine County*, 134 Idaho 353, 361, 2 P.3d 738, 746 (2000) (stating that district judge erred in permitting additional evidence on judicial review in the absence of a demonstrated procedural irregularity before the agency). The Partnership has made no such allegation and this Court's review is therefore constrained to the evidence before the Sun Valley City Council at the time it evaluated the applications.

7

The Partnership challenges several of the City's findings, arguing the findings are not supported by evidence in the record. We have reviewed the agency record and we conclude the City's findings of fact and conclusions are supported by the evidence, with one important exception. The evidence does not support the City's finding/conclusion numbered 16 that "[T]o change the Zoning District designation for the Subject Property from OR-1 to RA would require amending the Annexation Agreement." As discussed above, the Agreement does not require amendment before the Partnership may successfully seek a rezone of the Northern Property. It is impossible to tell how much the City relied on that mistaken interpretation in denying the zoning applications. Without knowing the role this particular finding played in the City's ultimate denial of the Partnership's applications, we are unable to tell if the City reached the wrong result, or, even if it reached the right result, did so for the wrong reason.

## 2. Prejudice to a substantial right

Idaho Code section 67-5279 under the I.A.P.A. requires that, "[n]otwithstanding the provisions of subsections (2) and (3) of this section, agency action shall be affirmed unless substantial rights of the appellant have been prejudiced." I.C. § 67-5279(4). In *Friends of Farm to Market*, this Court noted that "due process applies to quasi judicial proceedings like those conducted by zoning boards, and such due process requires notice of the proceedings, specific written findings of fact, and an opportunity to be present and rebut evidence." 137 Idaho at 198, 46 P.3d at 15; *see also* I.C. §§ 67-6534 – 6535.

The Partnership's assertion that it has been deprived of a substantial right is based entirely on the City's interpretation of the Agreement. The Partnership does not challenge procedural compliance with the Local Land Use Planning Act as such, but rather contends that the City's interpretation of the Agreement itself so prejudiced the Partnership as to deprive it of a full and fair opportunity to be heard. We find the City's interpretation of the Agreement did deprive the Partnership of a full and fair evaluation of its applications and accordingly, we remand this matter to the City.

We emphasize that all of the City's findings and conclusions are supported by substantial and competent evidence with the single exception of the finding relating to the requirement to amend the Agreement. On remand, the City need only reconsider the findings and conclusions in light of our decision that the Agreement does not require amendment in order for the City to consider the Partnership's applications. The City may make these determinations on the record

8

as it currently exists without the necessity of taking further evidence. Moreover, the City may certainly consider the Agreement, as well as the Agreement's history and purpose, in deciding whether to grant or deny the Partnership's applications. The Agreement may be a factor in the City's determination, but the Agreement does not absolutely bind the City to deny the rezone as the City's findings suggest.

## C. Attorney Fees

The district court applied I.C. § 12-117 to award the City a portion of its attorney fees incurred below. Based on its understanding of the Agreement as unambiguous in requiring the City to deny a rezone absent modification of the Agreement terms, the district court concluded that the Partnership pursued judicial review without a reasonable basis in fact or law. In light of our decision that the district court and the City incorrectly interpreted the Agreement, we vacate the district court's award of attorney fees below.

Both the Partnership and the City seek attorney fees on appeal based on the Agreement and, additionally, on I.C. § 12-117. Idaho Code section 12-117 provides for the award of reasonable attorney fees and costs "in any administrative or civil judicial proceeding involving as adverse parties a state agency, a city, a county or other taxing district and a person,… if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law." I.C. § 12-117(1). Neither party is entitled to attorney fees under I.C. § 12-117. Although we reject the City's reading of the Agreement, it is not an unreasonable position, especially given the district court's interpretation.

The Agreement provides in Paragraph 19(d) that in "any action or proceeding brought by either party against the other under this Agreement, the prevailing party shall be entitled to recover its fees of its attorneys in such action or proceeding, including costs of appeal, if any, in such amount as the court may adjudge reasonable…." We find that neither party is entitled to attorney fees under the terms of the Agreement. This Court has repeatedly held that contract provisions for attorney fees are generally enforced. *See Thomas v. Arkoosh Produce, Inc.*, 137 Idaho 352, 361, 48 P.3d 1241, 1250 (2002), citing *Ayotte v. Redmon*, 110 Idaho 726, 726-27, 718 P.2d 1164, 1164-65 (1986). However, neither of the actions brought by the Partnership are actions under the Agreement or to enforce provisions of the Agreement. The Partnership's case is at heart a matter of rezoning. While the Agreement was certainly a factor in the City's denial

9

of zoning, specific enforcement of the Agreement's terms was not the basis of the Partnership's suit. Consequently, we deny fees to either party on appeal.

## IV.

## CONCLUSION

The district court's order granting summary judgment is reversed and the matter remanded to the district court for further proceedings in the declaratory judgment action, if any are necessary. The decision of the district court on judicial review is vacated and the Partnership's applications are remanded to the City for further consideration in accordance with this opinion. The district court's award of attorney fees under I.C. § 12-117 is likewise vacated, and neither party is entitled to attorney fees on appeal. We award costs on appeal to the Partnership.

Chief Justice SCHROEDER and Justices EISMANN, BURDICK and JONES **CONCUR.**