## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

| | |
|---|---|
| ALLEN L. WISDOM,<br><br>    Plaintiff-Appellant,<br><br>v.<br><br>JANET C. MALLO, an individual; KAREN McMURTRIE, an individual; WILLIAM F. YOST, III, an individual; ALLIED MUTUAL INSURANCE COMPANY, an Iowa Mutual Insurance Company,<br><br>    Defendants-Respondents. | Docket No. 36616 |
| IN THE MATTER OF THE ESTATE OF LESSIE MAY STEIL, AKA LESSIE W. STEIL. | |
| ALLEN L. WISDOM,<br><br>    Plaintiff-Appellant,<br><br>v.<br><br>JANET C. MALLO, personal representative of the ESTATE OF LESSIE MAY STEIL, aka LESSIE W. STEIL,<br><br>    Defendant-Respondent. | Docket No. 36617 |
| ALLEN L. WISDOM,<br><br>    Plaintiff-Appellant,<br><br>v.<br><br>JANET C. MALLO, an individual; KAREN McMURTRIE, an individual; WILLIAM F. YOST, III, an individual; ALLIED MUTUAL INSURANCE COMPANY, an Iowa Mutual Insurance Company,<br><br>    Defendants-Respondents. | Docket No. 36976<br><br>2010 Unpublished Opinion No. 667<br><br>Filed: October 14, 2010<br><br>Stephen W. Kenyon, Clerk<br><br>THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |

1

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Thomas J. Ryan, District Judge.

Judgment dismissing tort action and order for submission of will to probate, affirmed.

Allen L. Wisdom, Idaho City, pro se appellant.

Terry Michaelson of Hamilton, Michaelson & Hilty, LLP, Nampa, for respondents.

_____

LANSING, Chief Judge

In this consolidated appeal, Allen L. Wisdom challenges the dismissal of his tort claims against William Yost, Janet Mallo, Karen McMurtrie, and Allied Mutual Insurance Company, and the order submitting his mother's will to probate. Wisdom asserts the district court made multiple errors. We affirm.

## I.

## BACKGROUND

These consolidated cases arise out of a dispute concerning the disposition of the estate of Wisdom's mother, Lessie May Steil. From 2004 to 2005, Steil executed three different wills, which were drafted and notarized by her attorney, Defendant William Yost. Steil's last will revoked all previously made wills and trusts, appointed Defendant Janet Mallo as the personal representative of the estate, and appointed Defendant Karen McMurtrie as the alternate personal representative. Mallo, in her capacity as personal representative of Steil's estate, filed a petition for formal probate of this will after Steil's death. Wisdom filed an objection in the probate case, challenging the validity of the will and requesting the appointment of a disinterested personal representative. The magistrate court ultimately entered an order admitting the will to probate and appointing Mallo as the personal representative. Wisdom appealed the magistrate court's decision to the district court.

While the probate case was pending in the magistrate court, Wisdom filed a separate tort action in the district court naming Yost, Mallo, McMurtrie, and Allied Mutual Insurance Company (Allied Mutual) as defendants (collectively referred to as Defendants). Wisdom alleged that the Defendants were liable for civil conspiracy, breach of fiduciary duty, tortious

2

interference with economic expectancy, undue influence, and fraud. Additionally, Wisdom asserted a claim against Yost for legal malpractice and against Yost and his surety, Allied Mutual, for breach of the Idaho Notary Public Act. Upon Wisdom's appeal to the district court in the probate case, the district court decided to hear the probate appeal as a trial *de novo* and consolidated the tort action with the probate appeal.[1] The district court conducted a bench trial despite Wisdom's request for a jury.

Before trial, Wisdom moved for defaults against Defendants in the tort case for failure to timely file responsive pleadings. Defendants filed motions to dismiss or, alternatively, motions for summary judgment. The court denied Wisdom's application for defaults and granted summary judgment for Defendants on Wisdom's tort claims for undue influence and fraud because the court determined that they were duplicative of Wisdom's claims in the probate case. The court also granted summary judgment on Wisdom's civil conspiracy and tortious interference with economic expectancy claims because Idaho does not recognize causes of action for civil conspiracy or for attempted interference with an inheritance. Yost was granted summary judgment on Wisdom's legal malpractice and breach of fiduciary duty claims on the ground that Yost did not owe Wisdom a fiduciary duty. Mallo and McMurtrie were granted partial summary judgment on Wisdom's breach of fiduciary duty claim. The court determined that transactions conducted after the appointment of the personal representative should be heard in the probate action and granted summary judgment in the tort case with regard to those transactions. However, the court concluded that to the extent Wisdom was making claims regarding sales of Steil's property or other transactions that Mallo and McMurtrie conducted under a power of attorney while Steil was still living, the claims would remain in the tort action. Finally, the court dismissed Wisdom's breach of the Idaho Notary Public Act claim against Yost in the tort action for failure to plead fraud with particularity and dismissed all claims against Allied Mutual because Allied Mutual's only connection to the suit was as surety for Yost, who had been dismissed. In sum, the court dismissed all tort claims against Yost and Allied Mutual and granted summary judgment on all claims against Mallo and McMurtrie except for the breach of fiduciary duty prior to Steil's death.

---

[1]     Whether a *de novo* trial was authorized under the circumstances of this case is not an issue raised by the parties.

After these dismissals and partial summary judgments, Wisdom filed motions to enter defaults against Yost, Mallo, and McMurtrie; compel discovery; vacate the scheduling order; and postpone the trial. Wisdom argued that tort claims still existed against Yost, Mallo, and McMurtrie and that they were in default for failing to file an answer to the remaining claims against them. Wisdom also argued that Defendants had not responded to his discovery requests, making it impossible for him to be prepared for trial. Defendants asserted that they had made available to Wisdom all the requested information they possessed. The court never ruled on Wisdom's motion for defaults. Wisdom's other motions were denied, and the consolidated cases proceeded to trial on May 19, 2009. On that date Wisdom continued to maintain that he was not prepared for trial, and he did not proffer evidence to support his claims. The extent of his participation at trial was to cross-examine some of Defendants' witnesses and make some objections. Thereafter, the court entered an order admitting Steil's will to probate and appointing Mallo as personal representative and a judgment dismissing Wisdom's remaining breach of fiduciary duty claims against Mallo and McMurtrie.

On appeal, Wisdom argues that the district court erred by not granting his requests for entry of defaults, granting partial summary judgments to Mallo and McMurtrie, "transferring" tort causes of action to the probate case "and later causing the transferred causes of action to disappear," refusing to order Mallo and McMurtrie to file an answer, granting summary judgment to Yost, dismissing Allied Mutual, denying Wisdom the opportunity to participate in scheduling, conducting a bench trial instead of a jury trial, denying Wisdom the opportunity to conduct discovery, declining to continue the trial, refusing to hear Wisdom's motion for the appointment of a special administrator, allowing irregularities at trial, admitting Steil's last will and testament to probate, appointing a conflicted personal representative, and awarding attorney fees to Defendants. Wisdom also claims these various errors violated his due process rights. Many of Wisdom's claims on appeal are so interrelated that we have re-organized and combined them for ease and clarity of discussion.

4

## II.

## DISCUSSION

**A.    Did the District Court Err in Not Granting Wisdom's Requests for Entry of Defaults?**

Having been personally served with Wisdom's tort complaint on November 13, 2008, Yost, McMurtrie, and Allied Mutual were required to file responsive pleadings on or before December 3, 2008.  Idaho Rule of Civil Procedure 12(a).  Mallo was personally served on November 17, 2008, and was required to file a responsive pleading on or before December 7, 2008.  *Id*.  A notice of appearance was filed on November 18, 2008, for Mallo and McMurtrie, and on November 24, 2008, for Yost and Allied Mutual.  On December 4, 2008, Allied Mutual filed an I.R.C.P. 12(b)(6) motion to dismiss.  Then on December 11, 2008, Wisdom filed a motion for entry of defaults against the Defendants and served the motion upon them by mail.  On December 15, 2008, Yost, Mallo, and McMurtrie filed an I.R.C.P. 12(b)(6) motion to dismiss or, alternatively, for summary judgment.  Wisdom then sought to "strike" the motions to dismiss as untimely because they were not filed within twenty days after service of Wisdom's complaint.  The district court denied Wisdom's application for entry of default because default "would not be in the interests of justice" and also stated that it would entertain the motions to dismiss because Wisdom did not indicate any prejudice that may result from the court considering the motions to dismiss on the merits.  On February 3, 2009, the district court granted summary judgment to Yost, granted partial summary judgment to McMurtrie and Mallo, and dismissed Wisdom's claims against Allied Mutual.

On March 3, 2009, Wisdom filed another motion for default against Yost, Mallo, and McMurtrie in the tort case.  Wisdom argued that because the district court appeared to have "transferred" his causes of action against these three to the probate case, they were still required to file an answer to the claims in his tort action within ten days of the court's summary judgment decision pursuant to I.R.C.P. 12(a).  Additionally, he pointed out, Mallo and McMurtrie were required to file an answer to the surviving claims in the tort action.  As none of the defendants had filed an answer within ten days, Wisdom argued that defaults should be entered against them.  Yost, Mallo, and McMurtrie never responded to this motion, and it does not appear from the record that the district court ever ruled on it.  On appeal, Wisdom argues that the district court abused its discretion by not granting Wisdom's motions for defaults because I.R.C.P 12(a) and (b) required entry of defaults against Defendants on both occasions.

5

A defendant generally has twenty days after service of the summons to file a responsive pleading in the action.  I.R.C.P. 12(a).  However,

> [t]he service of a motion permitted under this rule alters these periods of time as follows, unless a different time is fixed by order of the court:  (1) if the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within ten (10) days after notice of the court's action . . . .

*Id.*  If a party fails to plead or "otherwise defend as provided by these rules" the court may enter a default against the party.  I.R.C.P. 55(a)(1).  However, default cannot be entered against a party who has appeared in the action unless that party was served with three days written notice of the application for entry of default.  I.R.C.P. 55(a)(1).  Furthermore, if

> a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, three (3) days shall be added to the prescribed period.

I.R.C.P. 6(e)(1).  Therefore, upon service of a motion for entry of default, a party who has entered an appearance may take action to defend, and thereby prevent entry of a default, within six days pursuant to I.R.C.P. 6(e)(1) if the party was served notice by mail.  Where a party has entered a notice of appearance and moved for the dismissal of the action or for summary judgment, though the motion be made outside the I.R.C.P. 12(a) twenty-day time period, entry of default judgment against that party is properly denied.  *Conley v. Looney*, 117 Idaho 627, 629, 790 P.2d 920, 922 (Ct. App. 1989).  Although *Conley* was addressing default judgment, it is instructive to a default analysis as well.

It is thus apparent that the district court did not err in denying Wisdom's first application for entry of default.  Allied Mutual had filed a notice of appearance and moved for dismissal, though the dismissal motion was made one day outside the twenty-day deadline, before Wisdom's application for entry of default.  It therefore had not "failed to plead or otherwise defend" when Wisdom's motion for default was filed.  Although Wisdom did apply for default against Yost, Mallo, and McMurtrie before they filed motions to dismiss, distinguishing *Conley*, the court could properly deny a default against them.  The motion for default was served by mail on December 11, 2008, so these Defendants were entitled to take action through December 17. Two days before this deadline, Yost, Mallo, and McMurtrie filed their motions to dismiss. Therefore, these parties filed a notice of appearance and moved for dismissal before a default

could issue. It follows that the district court correctly denied Wisdom's first application for default against Yost, Mallo, and McMurtrie.

Wisdom's second motion for default against Mallo and McMurtrie is more problematic. Although Wisdom is incorrect in asserting that Yost, Mallo, and McMurtrie were required to respond to the claims that were dismissed on summary judgment and therefore no longer existed in the tort action, there remained Wisdom's breach of fiduciary duty claim against Mallo and McMurtrie that survived summary judgment. They never filed an answer to this claim. Nevertheless, we find no reversible error in the district court's failure to rule on Wisdom's second motion for default. An error is prejudicial only if it could have affected or did affect the outcome of a proceeding. *Wohrle v. Kootenai County*, 147 Idaho 267, 272, 207 P.3d 998, 1003 (2009); *Crown Point Dev., Inc. v. City of Sun Valley*, 144 Idaho 72, 77, 156 P.3d 573, 578 (2007). *See also In re Estate of Keeven*, 126 Idaho 290, 296, 882 P.2d 457, 463 (Ct. App. 1994) ("This Court will not grant relief for what is, at most, harmless error."). It is apparent that Wisdom was not prejudiced by the court's failure to act on his application for default. By the time his second application was filed, it was clear that Mallo and McMurtrie were actively participating in the litigation and vigorously defending against Wisdom's tort claims. As is explained in more detail below, Wisdom received a trial on the merits in which he had a full opportunity to present any evidence to support his claim of breach of fiduciary duty by Mallo and McMurtrie, but he failed to do so. Nothing in the record suggests that the district court's decision dismissing these claims after a full trial on the merits was based upon some affirmative defense of which Wisdom lacked notice or other factor that could have been affected by Mallo's and McMurtrie's failure to file an answer to this claim.

Even if Wisdom was entitled to a default against Mallo and McMurtrie, he would not have been assured of obtaining a default judgment against them without evidence to prove his claim, particularly where they had already appeared and contested his claims. I.R.C.P. 55(b)(2) ("If, in order to enable the court to enter judgment or carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper."); *Olson v. Kirkham*, 111 Idaho 34, 38, 720 P.2d 217, 220 (Ct. App. 1986) (holding that a court may exercise its discretion in determining whether additional evidence is necessary on application for a default judgment).

Finally, even if Wisdom could have demonstrated some breach of fiduciary duty by Mallo and McMurtrie as attorneys-in-fact for Steil prior to initiation of the probate proceedings, he could not have demonstrated any damages. This is so because the estate's value at the time of the trial was between $300,000 and $500,000, and Wisdom's share under the will was $5,000; therefore, any breach of fiduciary duty by Mallo and McMurtrie did not affect Wisdom's inheritance. For all of these reasons, the district court's error in failing to act on Wisdom's second application for a default against Mallo and McMurtrie was harmless.

**B.** **Did the District Court Err in Granting Summary Judgment to Yost, Granting Partial Summary Judgment to Mallo and McMurtrie, and Dismissing Wisdom's Action Against Allied Mutual?**

Summary judgment under I.R.C.P. 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986). When assessing a motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party and all reasonable inferences are drawn in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint School Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App. 1994).

The United States Supreme Court, in interpreting Federal Rule of Civil Procedure 56(c), which is identical in all relevant aspects to I.R.C.P. 56(c), stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citations omitted). The language and reasoning of *Celotex* has been adopted in Idaho. *Dunnick v. Elder*, 126 Idaho 308, 312, 882 P.2d 475, 479 (Ct. App. 1994).

8

We will affirm a trial court's grant of an I.R.C.P. 12(b)(6) motion where the record demonstrates that there are no genuine issues of material fact and the case can be decided as a matter of law. *Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 398, 987 P.2d 300, 310 (1999). The issue is not whether the plaintiff will ultimately prevail, but whether the party is entitled to offer evidence to support the claims. *Orthman v. Idaho Power Co.*, 126 Idaho 960, 962, 895 P.2d 561, 563 (1995).

Wisdom makes some arguments that apply equally to Yost's, Mallo's, and McMurtrie's summary judgments, and Allied Mutual's dismissal. First, Wisdom argues that the summary judgments and the dismissal were improper because the district court did not allow discovery first. As discussed in more detail in Section C below, Wisdom's argument fails as the record establishes Wisdom was given ample opportunity to conduct discovery.

Wisdom next asserts that the district court erred in "transferring" certain causes of action from the tort case to the probate case and then granting summary judgment on the causes of action in the tort case when they "still existed" in the probate case. Wisdom asserts that these claims should have been heard in the tort case and not in the probate case because as probate claims, Wisdom's remedies were limited. Wisdom argues this "procedural nightmare" violates the Idaho Rules of Civil Procedure, his right to due process, and is not supported by I.C. § 15-3-407. Wisdom also argues that on several claims, the district court improperly based its rulings on issues not raised by the Defendants, but by the court itself. We need not address these arguments because we find Wisdom suffered no prejudice from the district court's disposition of these claims, as Wisdom failed to prove in the consolidated action that he had a factual basis to bring them. As stated above, an error is prejudicial only if it could have affected or did affect the outcome of a proceeding. *Wohrle*, 147 Idaho at 272, 207 P.3d at 1003; *Keeven*, 126 Idaho at 296, 882 P.2d at 463 ("This Court will not grant relief for what is, at most, harmless error."). At trial the Defendants and three other witnesses testified that the decedent was competent at the time the will was signed and that there was no factual support for Wisdom's claims. Wisdom failed to produce any witnesses or elicit any evidence on cross-examination in support of his contentions that Steil had been incompetent or that any of the Defendants had exercised undue influence over her or otherwise engaged in misconduct. Although Wisdom attributes this to a lack of discovery, as explained in more detail below, Wisdom was allowed adequate opportunity to conduct discovery before trial. Therefore, because Wisdom could not produce any factual

9

support for these claims regardless of which case they were tried in, any error in the district court's "transfer" of some tort claims to the probate case was harmless.

      1.      **Summary judgment for Yost**

Wisdom also asserts errors specific to the dismissal of the claims against Yost and Allied Mutual. Wisdom argues that the court's original memorandum decision did not mention certain claims being dismissed as to Yost. Those claims were civil conspiracy, tortious interference with economic expectancy, undue influence, fraud, and breach of fiduciary duty. According to Wisdom, these claims simply "disappeared" from all further proceedings. Wisdom argues this was error because by not addressing the claims but nevertheless dismissing them, the trial court clearly could not be said to have applied the summary judgment standards of law to those claims. This argument lacks any factual basis, for the district court did grant summary judgment on all of the causes of action against Yost in its memorandum decision, but allowed some of the same allegations of misconduct to be litigated in the trial *de novo* of the probate appeal. Wisdom's argument on appeal fails because it is predicated upon an inaccurate description of the district court's action on Yost's motion for summary judgment.

Wisdom also argues that the district court erred in concluding that he was required to plead his Idaho Notary Act claim with particularity because not all the conduct prohibited by I.C. § 51-112 requires fraud and Wisdom pled negligence, a ground specifically enumerated in I.C. § 51-112.[2] Again, Wisdom's argument fails for lack of factual support. He did not plead a negligence claim in his complaint but specifically alleged that Yost engaged in fraudulent conduct. Because Wisdom's complaint alleged fraud, not the I.C. § 51-112 "official misconduct" language as Wisdom contends, the district court properly held that the claim was subject to dismissal because it was not pleaded with particularity as required by I.R.C.P. 9(b).

Wisdom next argues that even if he was required to plead his Idaho Notary Act claim with particularity, the district court erred in dismissing the claim without giving Wisdom a chance to amend his complaint. As Wisdom cites no authority for this proposition, he waives the issue on appeal. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997) (holding that a party waives an issue on appeal if either argument or authority is lacking). We

---

[2]     Wisdom also asserts these errors regarding his Idaho Notary Act claim against Allied Mutual. Because we address it in this section, we do not repeat our analysis in the next section concerning arguments against Allied Mutual's dismissal.

also note that Wisdom never filed a motion to amend his complaint, so he could not have been denied that opportunity by the district court.

Wisdom next contends that the district court erred in granting summary judgment on his legal malpractice claim because, under *Harrigfeld v. Hancock*, 140 Idaho 134, 138, 90 P.3d 884, 888 (2004), Yost owed a fiduciary duty to Wisdom when he was employed by Steil to draft her will. Generally, an attorney can be held liable for legal malpractice only to his or her client. *Harrigfeld*, 140 Idaho at 137, 90 P.3d at 887; *Estate of Becker v. Callahan*, 140 Idaho 522, 526, 96 P.3d 623, 627 (2004). Nevertheless,

> an attorney preparing testamentary instruments owes a duty to the beneficiaries named or identified therein to prepare such instruments, and if requested by the testator, to have them properly executed, so as to effectuate the testator's intent as expressed in the testamentary instruments. If, as a proximate result of the attorney's professional negligence, the testator's intent as expressed in the testamentary instruments is frustrated in whole or in part and the beneficiary's interest in the estate is either lost, diminished, or unrealized, the attorney would be liable to the beneficiary harmed.

*Harrigfeld*, 140 Idaho at 138, 90 P.3d at 888. As this quote makes clear, the attorney's duty is to prepare testamentary instruments that effectuate the testator's intent; an attorney has no duty to see that the testator distributes his or her property among the named beneficiaries in any particular manner. *Id*. Therefore, the extension of an attorney's duty to named beneficiaries does not "subject attorneys to lawsuits by persons who simply did not receive what they believed was their fair share of the testator's estate." *Id*. at 139, 90 P.3d at 889.

In this case, though Wisdom is a named beneficiary in Steil's testamentary instrument, the trial court was correct in holding that Wisdom has presented no issue of material fact that would subject Yost to a valid malpractice claim, for Wisdom did not assert that some error by Yost in drafting the instrument caused Wisdom to not receive what Steil intended him to receive. Rather, Wisdom asserted that Yost should not have drafted the will or allowed it to be executed because of Steil's legal incompetence and the undue influence being exerted upon Steil. As *Harrigfeld* held, the duty of a lawyer to the named beneficiaries of his or her client's testamentary instrument does not extend to such claims. Wisdom made no averment that Yost did not fulfill his duty to the named beneficiaries by giving effect to Steil's intent as expressed in her will. Therefore, summary judgment on Wisdom's legal malpractice claim against Yost was appropriate.

11

### 2.   Allied Mutual's 12(b)(6) motion to dismiss

Wisdom argues that the district court erred in dismissing Allied Mutual because it improperly granted summary judgment to Yost on three counts. Wisdom maintains that Allied Mutual can be sued directly because it is not an "insurance company" but a "surety"; and because Yost is liable for wrongful conduct, Wisdom can directly sue Allied Mutual, as Yost's surety, for such liability. Wisdom further asserts that the court improperly dismissed his claim against Allied Mutual on a ground different from that asserted by Allied Mutual in its motion to dismiss.

Wisdom's contention that the district court improperly dismissed Allied Mutual on a ground different than that raised in Allied Mutual's motion, even if true, does not entitle him to relief on appeal. If a trial court's decision is predicated upon an incorrect theory, it may be affirmed on appeal on the correct theory. *BECO Constr. Co., Inc. v. J-U-B Eng'rs, Inc.*, 145 Idaho 719, 724, 184 P.3d 844, 849 (2008); *J.R. Simplot Co., Inc. v. Idaho State Tax Comn'n*, 120 Idaho 349, 853, 820 P.2d 1206, 1210 (1991). Here, Allied Mutual sought dismissal of Wisdom's claim against it on the ground that, even if Allied Mutual were ultimately obligated to pay any damages awarded to Wisdom against Yost, "a third party may not directly sue an insurance company in an attempt to obtain the coverage allegedly due the insurer's policy holder." Allied Mutual's contention was correct, and it was entitled to dismissal of Wisdom's claim on this basis. *See Graham v. State Farm Mut. Auto Ins. Co.*, 138 Idaho 611, 613-14, 67 P.3d 90, 92-93 (2003); *Stonewall Surplus Lines Ins. Co. v. Farmers Ins. Co. of Idaho*, 132 Idaho 318, 321-22, 971 P.2d 1142, 1145-46 (1998). As the Idaho Supreme Court stated in *Pocatello Ind. Park Co. v. Steel West, Inc.*, 101 Idaho 783, 791, 621 P.2d 399, 407 (1980): "It is well established that absent a contractual or statutory provision authorizing the action, an insurance carrier cannot be sued directly and cannot be joined as a party defendant. . . . We are aware of no direct action statute in Idaho." Accordingly, the district court's order dismissing Wisdom's claims against Allied was correct, even if predicated on a theory that should not have been raised sua sponte.

### C.   Did the District Court Err in Denying Discovery and in Denying Wisdom's Requests to Continue the Trial?

Wisdom asserts that the district court abused its discretion by not issuing an order compelling Defendants to respond to his discovery requests and that the district court should have continued the trial because Wisdom was unable to complete discovery. We review a trial court's decision to grant or deny a motion to compel discovery for a clear abuse of discretion.

*Villa Highlands, LLC v. Western Comty. Ins. Co.*, 148 Idaho 598, 609, 226 P.3d 540, 551 (2010); *Sirius LC v. Erickson*, 144 Idaho 38, 43, 156 P.3d 539, 544 (2007).

The record here does not show that Wisdom was denied discovery or that the district court failed to compel discovery within a sufficient timeframe to allow Wisdom to prepare for trial. In the six months that passed from the initiation of Wisdom's tort action until the trial, he had ample time to independently interview witnesses and gather relevant information from third parties. The court took steps to aid Wisdom in conducting his own investigation by ensuring that he received a confidentiality waiver from the personal representative so Wisdom could acquire the decedent's medical information concerning her competence. Wisdom was also on notice of the Defendants' potential trial witnesses as early as four months prior to trial and could have interviewed them. However, Wisdom apparently did not conduct an independent investigation; rather, he contended that Defendants possessed all the information he needed to support his claims and refused to take steps other than asking the court to order Defendants to turn over information that they repeatedly represented they did not possess. This is illustrated in the following exchange:

> THE COURT: And I'm not in a position to give you any legal advice, but I would think you would want to conduct your own investigation given the authorizations to obtain medical information. And if I were you I would start that tomorrow.
> WISDOM: Well, I will. I don't have but one doctor's name, and I need other medical providers' names, and they have all the records.
> MICHAELSON: We don't. We gave you what we had.
> WISDOM: They have all of my mother's records from before she moved to Idaho and while she lived in Idaho.
> THE COURT: Well, you say that, but what information do you have that would lead the court to believe that what Mr. Michaelson is representing is untrue?
> WISDOM: I say that they have possession of the records, and the information is in the records.
> THE COURT: I hear you say that, and they tell me that they don't. How am I going to referee that?
> WISDOM: Discovery.
> THE COURT: You need to provide some evidence that they do have this information.
> WISDOM: Order the discovery.
> THE COURT: Okay. And, Mr. Michaelson, what's your position on that?
> MICHAELSON: The discovery would be we don't have this. . . . I mean, that's not the kind of stuff that we would have or we would have access to.

13

. . . .

. . . I disclosed ten witnesses and that doesn't even count the medical records people.

This exchange took place two months after the court insured that Wisdom would receive a confidentiality waiver so he could gather the decedent's medical records himself. As this discussion shows, Wisdom squandered these two months that could have been used to conduct an investigation; instead he sought to force Defendants to give him information that they repeatedly denied possessing.

Wisdom also received discovery responses, including names of witnesses, names of nonwitnesses with relevant information, and 800 pages of medical and legal documentation. His complaint that he was unable to obtain responses is frivolous. For example, in response to one of Wisdom's interrogatory questions as to whether, when, where, in whose presence, and with what detail Mallo had ever discussed decedent's relationship with Wisdom, Mallo answered:

Yes. Defendant discussed Decedent's relationship with the Plaintiff on almost every occasion she visited with Decedent or talked with her telephonically. These discussions took place in Boise, McCall, and in Arizona. Decedent would question what she had done to make Plaintiff hate her. Decedent stated that she would ask Plaintiff what she had done. Decedent stated that Plaintiff said that she knew what she had done to him. Decedent was upset and troubled by the fact that the Plaintiff had little to do with her. No record was kept of the times and dates of the conversations.

Wisdom challenged this answer as nonresponsive because "defendant admits to 'discussions' but identifies only one discussion." Mallo's response was detailed and complete; her inability to detail precisely what comments were made on specific dates is understandable, as people normally do not write down the dates of discussions with close family members and friends and take notes. Wisdom's complaint that this answer is insufficient is frivolous and is generally representative of his complaints regarding other discovery answers he received.

Wisdom's contention that he was denied discovery is disproven by the record, and his argument that the district court should have continued the trial because of Wisdom's lack of access to discovery is without merit.

14

**D.     Did the District Court Err in Creating Scheduling Orders Without Wisdom's Input?**

Wisdom argues that the district court erred in creating scheduling orders without consulting Wisdom in violation of I.R.C.P. 16(b) which states, "Except in cases exempted by order of the court as inappropriate, the judge or magistrate shall, *after consulting with the attorneys for the parties and any unrepresented parties*, by a scheduling conference, telephone, mail or other suitable means, enter a scheduling order." (Emphasis added.)

On appeal a trial court's fashioning of a pretrial scheduling order for efficient case management will be reviewed for an abuse of discretion. *Peterson v. McCawley*, 135 Idaho 282, 284, 16 P.3d 958, 960 (Ct. App. 2000); *Fish Haven Resort, Inc. v. Arnold*, 121 Idaho 118, 121, 822 P.2d 1015, 1018 (Ct. App. 1991).

Wisdom's opening brief takes issue under this heading with many trial court actions that have nothing to do with scheduling. Such issues, including lack of opportunity to engage in discovery, are addressed elsewhere. After parsing out the irrelevant factual recitations concerning those issues, it appears that Wisdom asserts error in the scheduling of trial for May 19, 2009; the court's April 3, 2009, scheduling order; and the court's April 13, 2009, amended scheduling order. Wisdom's arguments are unfounded. He was consulted regarding scheduling the trial at a March 19, 2009, hearing. After a discussion concerning discovery, Wisdom told the court that he could be ready for trial beginning May 19, 2009. The April 3, 2009, scheduling order was just a written summary of what had been agreed to at the hearing. Wisdom's arguments to the contrary are groundless.

The amended scheduling order entered April 13, 2009, was in direct response to Wisdom's motions for reconsideration. The district court concluded that the liability issues in Wisdom's tort action and his allegations of undue influence, fraud, and other misconduct in the probate proceeding should be severed from the issue of damages in his tort action and directed that the already-scheduled trial would address only the probate and tort liability issues. The court reasoned that including evidence concerning damages would unduly complicate the trial and that the damages issue would be moot if Wisdom did not prevail on liability issues. Wisdom does not take issue with the scheduling of the trial date itself; he takes issue with the court severing the liability issues from the issue of damages. However, a trial court may sever trials to prevent delay, I.R.C.P. 20(b), and Wisdom has shown no abuse of the trial court's discretion in this regard.

15

**E.     Did the District Court Deny Wisdom's Statutory and Constitutional Right to a Jury Trial?**

Wisdom argues that because his claims were not equitable but legal, the district court's denial of his request for a jury trial violated I.C. §§ 15-8-210, 15-1-306 and violated Wisdom's constitutional rights.  We conclude that even if an error occurred, it was harmless.

Error in denying a litigant a jury trial can be harmless error if it is apparent following a court trial that no reasonable jury could have found for that litigant upon the evidence provided to the trial court.  *Dustin v. Beckstrand*, 103 Idaho 780, 786, 654 P.2d 368, 374 (1982) (erroneous denial of jury trial was not reversible error because, where defendants did not participate in the court trial, if a jury trial had been conducted the court would have been required to direct a verdict for the plaintiff).  *See also California Scents v. Surco Prods., Inc.*, 406 F.3d 1102, 1109 (9th Cir. 2005); *United States v. California Mobile Home Park Mgmt Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997).  *See also Pickens v. Soo Line R.R. Co.*, 264 F.3d 773, 779 (8th Cir. 2001) (holding that denial of jury trial was harmless error); *Brown v. Sandimo Materials*, 250 F.3d 120, 127 (2d Cir. 2001) (reviewing denial of a jury trial for harmless error); *Segrets, Inc. v. Gillman Knitwear Co., Inc.*, 207 F.3d 56, 64 (1st Cir. 2000) (holding that denial of a jury trial is harmless error if the evidence produced meets the standard for a directed verdict); *Sims v. Fitzpatrick*, 288 S.W.3d 93, 102 (Tex. App. 2009) (reviewing denial of a jury trial for harmless error).  As explained above, Wisdom presented not a scintilla of evidence to support any of his tort claims or his objections to the appointment of the personal representative or probate of Steil's will.  Therefore, no reasonable jury could have found in his favor and any error in the denial of a jury trial was harmless at best.

**F.     Did the District Court Err in Refusing to Hear Wisdom's Petition for the Appointment of a Special Administrator?**

Wisdom next asserts that the district court erred in denying oral argument on his motion for the appointment of a special administrator and in not ruling on the motion.  Wisdom asserts that this was an abuse of discretion because Mallo, the personal representative appointed by the court, was using estate assets for personal use, and therefore a special administrator was required to protect the estate.

We review the decision to deny oral argument on a motion for an abuse of discretion. I.R.C.P. 7(b)(3)(D); *Lamm v. State*, 143 Idaho 763, 766, 152 P.3d 634, 637 (Ct. App. 2006).

Oral argument is not required; a trial court may limit or deny such argument. *Id.* Wisdom has not shown an abuse of discretion in the denial of oral argument on his motion.

It is not appropriate, of course, for a trial court to fail to rule on a motion at all. *See*, *e.g.*, *Montgomery v. Montgomery*, 147 Idaho 1, 6, 205 P.3d 650, 655 (2009) (stating that "trial courts must determine the admissibility of evidence as a 'threshold question' to be answered before addressing the merits of motions for summary judgment" and therefore a district court's failure to rule on evidentiary issues before deciding motions for summary judgment is an abuse of discretion). However, any error in this regard does not require reversal here because it was harmless. *Keeven*, 126 Idaho at 296, 882 P.2d at 463. Wisdom was to receive $5,000 as a beneficiary under the will. An accounting of the estate at the time of trial showed its value in excess of $300,000. As Wisdom's only interest in the estate was unharmed, he cannot show prejudice from the court's omission to decide (or grant) his motion to appoint a special administrator. Therefore, no reversible error is demonstrated.

**G.      Did the District Court Err in Allowing Irregularities at Trial?**

Apart from issues that we have already addressed, Wisdom's only argument concerning "irregularities" at trial is his contention that the district court did not have "any substantive evidence" to support its findings and conclusions following the bench trial. He contends that the Defendants never presented "proof of venue" or proof that Steil actually died. The absurdity of this argument is apparent from Wisdom's own pleadings. He never contested the venue of the probate proceeding, and as plaintiff in the tort action, he selected the venue himself. Further, Wisdom's own objection to the petition for formal probate and his complaint in the tort action specifically alleged that Steil was deceased. Neither venue nor the fact of Steil's death was a contested issue in the consolidated action, and the Defendants were not required to prove facts that Wisdom had admitted in his own pleadings.

Next Wisdom argues that the Defendants comprised most of the witnesses, and therefore, as interested parties their testimony was not credible. It is the province of the trial court to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. *Triad Leasing & Fin., Inc. v. Rocky Mountain Rogues, Inc.*, 148 Idaho 503, 514, 224 P.3d 1092, 1103 (2009); *KMST, LLC v. County of Ada*, 138 Idaho 577, 581, 67 P.3d 56, 60 (2003). Moreover, not all the witnesses were the Defendants; their testimony was supported by disinterested parties. The Defendants produced nontestimonial evidence to support

their case as well. Wisdom, on the other hand, produced absolutely no evidence supporting his case. Therefore, the trial court had ample "substantive evidence" to support its credibility determinations and inferences drawn from the evidence.

**H.      Did the District Court Err in Admitting the Purported Last Will and Testament to Probate, Appointing a Conflicted Personal Representative and Issuing Letters Testamentary?**

Wisdom lists as an issue in his appellant's brief, "Did the district court err in admitting the purported Last Will and Testament to probate, appointing a conflicted personal representative and issuing letters testamentary?" He does not, however, address the issue with any separate argument and authority apart from the contentions already addressed by this Court. Thus, this Court will not address it further.

**I.      Did the District Court Err in Awarding Attorney Fees to Any Party?**

The district court awarded attorney fees to the Defendants on the ground that Wisdom's objections to the petition for formal probate and his tort claims were frivolous and without foundation. Wisdom argues that this was error because the Defendants were not prevailing parties and Wisdom's objection in the probate case and claims in the tort case were not brought frivolously.[3]

A court may award attorney fees to the prevailing party pursuant to I.C. § 12-121 when it finds that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation. I.R.C.P. 54(e)(1). The decision whether to award attorney fees pursuant to I.C. § 12-121 is within the discretion of the district court and will be reviewed for an abuse of discretion. *Hunt v. Hunt*, 137 Idaho 18, 22, 43 P.3d 777, 781 (2002); *Simons v. Simons*, 134 Idaho 824, 830, 11 P.3d 20, 26 (2000). Also discretionary, is the question of which party to the action is the prevailing party. *Shore v. Peterson*, 146 Idaho 903, 915, 204 P.3d 1114, 1126 (2009). When reviewing a trial court's discretionary decision, this Court inquires into whether

[3]      Wisdom further asserts that the award of attorney fees to Steil's estate was in error because the estate was not a party to the action. Wisdom does not cite any authority in support of this claim, and therefore waives it on appeal. *See Powell*, 130 Idaho at 128, 937 P.2d at 440. Furthermore, the estate was in fact always a party to the probate case. Wisdom also claims in a conclusory manner that Defendants did not prove the fees sought were "reasonable." As Wisdom does not support this claim with any further argument, he waives the issue on appeal. *Id*. Furthermore, this claim is belied by the record, which shows Defendants did show reasonableness and the court properly found the fees reasonable.

the lower court correctly perceived the issue as discretionary, acted within the boundaries of such discretion and consistently with applicable legal standards, and reached its decision by an exercise of reason. *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

Since all of Wisdom's claims were decided in favor of Defendants, the district court plainly did not abuse its discretion in determining that they were the prevailing parties. Wisdom's argument that there should be no attorney fee award because his claims were dismissed without prejudice[4] is also meritless. Whether a dismissal is with or without prejudice does not affect its finality, and it is well settled that a formal order dismissing the action is a final judgment. *Eby v. State*, 148 Idaho 731, 735-36, 228 P.3d 998, 1002-03 (2010); *Castle v. Hays*, 131 Idaho 373, 374, 957 P.2d 351, 352 (1998).

Additionally, the district court did not err in determining that Wisdom's claims were pursued frivolously and unreasonably. As the court pointed out,

> Despite an eight and one-half month period in which to gather evidence to support his claims, Wisdom did not present any evidence to the Court at the trial. Rather, he claimed that he did not have adequate time to conduct discovery and was not prepared.
>       . . . .
> . . . Wisdom had a list of [Steil's] medical providers and a "medical release" to obtain medical records regarding her care. He obviously never followed through with obtaining those documents, or if he did, he never made the court aware of it. Wisdom did not produce any evidence at the trial to support the claims he made of his mother's incompetence to manage her affairs. He produced no evidence to support his claims that Mallo and McMurtrie unduly influenced Steil or otherwise to support his claims of fraud and duress.

The utter lack of evidence demonstrates that Wisdom possessed no factual basis for his objection in the probate proceeding or for his tort complaint, and they were therefore without foundation from the inception. It follows that the district court did not abuse its discretion in awarding Defendants attorney fees pursuant to I.C. § 12-121.

---

[4]      The district court made the judgment of dismissal "without prejudice" so that "[i]f and when the Plaintiff can demonstrate that there are inadequate funds in the estate of [decedent] to pay the $5,000 bequeathed to him, the Plaintiff shall then have standing to refile this action to pursue any claims asserted therein to the extent the same have not been previously dismissed by this court."

**J.      Did the District Court Violate Wisdom's Right to Due Process?**

Wisdom asserts that cumulatively, his claims of error show deprivations of his right to due process. As this Court has already determined that Wisdom's claims of error are without merit, no due process violation is shown.

Wisdom also contends that the trial court was not impartial or disinterested, but he cites no portion of the record and offers no further argument in support of this conclusory assertion. Therefore, Wisdom has waived this issue on appeal. *See Powell*, 130 Idaho at 128, 937 P.2d at 440.

**K.      Attorney Fees on Appeal**

Defendants seek attorney fees and costs on appeal pursuant to Idaho Appellate Rule 41(a), I.C. §§ 12-121 and 12-123, I.C. § 15-8-208, and Idaho Rule of Civil Procedure 54(d)-(e). Defendants argue that Wisdom's action was brought and pursued frivolously and unreasonably, and for the sole purpose to harass and maliciously injure the other beneficiaries of Steil's estate.

Because we find costs and attorney fees proper under I.C. § 12-121 and I.A.R. 41(a), we will not address the other grounds asserted by the Defendants. An award of attorney fees to the prevailing party pursuant to I.C. § 12-121 is appropriate when the court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation. *Rendon v. Paskett*, 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct. App. 1995). Though the trial court here made unconventional procedural decisions and failed to address at least two of Wisdom's motions, it is clear that Wisdom brought this action and pursued this appeal unreasonably and frivolously. As stated above, Wisdom possessed no evidence to support his multitude of claims, but engaged in litigation tactics that forced the Defendants to expend funds and deplete estate assets in order to respond to unfounded claims, discovery complaints, and frivolous motions. Wisdom then pursued this appeal, forcing the Defendants to expend yet more resources, even though it was clear that, in view of the lack of any evidentiary support at trial for his allegations against the Defendants, any error in the district court proceedings was harmless. In our view, Wisdom brought and pursued this consolidated action and appeal frivolously,

20

unreasonably, and without foundation.[5]  Therefore, this Court grants reasonable attorney fees to Defendants pursuant to I.A.R. 41(a) and I.C. § 12-121.

## III.

## CONCLUSION

The judgment of the district court dismissing Wisdom's tort claims, its order admitting Steil's will to probate, and its award of attorney fees are affirmed.  Costs and attorney fees on appeal to Defendants.

Judge GRATTON and Judge MELANSON **CONCUR.**

---

[5]  In their respondents' brief, the Defendants request "to the extent permissible by this Court, that the Court consider issuing a restraining order against the Appellant from filing any additional filings, actions, or claims against Respondents or Respondents' counsel in any state court within the state of Idaho, without first obtaining approval for each document filed by either an Idaho judge or an attorney licensed to practice in the state of Idaho."  Although it may be within the authority of the district court or the Idaho Supreme Court to issue such an order, *see Eismann v. Miller*, 101 Idaho 692, 619 P.2d 1145 (1980), this Court being neither a court of general jurisdiction nor one with supervisory authority over the trial courts, it is not apparent that this Court possesses authority to issue such an order, and we therefore take no action on the request by the Defendants.